## Staunton.

### OLIVER HATCHETT v. THE COMMONWEALTH.

#### November 23, 1882.

1. CRIMINAL PROCEEDINGS—*Murder by poison.*—To entitle the Commonwealth to a verdict, it is essential to prove clearly, beyond a reasonable doubt, these three essential propositions, viz :
    1. That the deceased came to his death by poison.
    2. That the poison was administered by the accused.
    3. That he administered it knowingly and feloniously.
2. IDEM—*Idem— Case at bar.*—H is indicted for the murder of Y by poison. There was no *post-mortem*, and no analysis of the contents of the deceased's stomach, or of the vessel which contained the liquor administered; or sufficient proof that the accused administered it, or that he knew that it contained poison, and that there was any motive or provocation for the deed.

HELD :

The verdict must be set aside, and a new trial granted the accused.

Error to judgment of circuit court of Brunswick county, rendered 21st April, 1882, sentencing Oliver Hatchett to be hanged by the neck until he be dead, for the murder of Moses Young by the administration of poison. To this judgment Hatchett obtained a writ of error and *supersedeas.* The facts are fully stated in the opinion of the court.

*Merritt & Lewis* and *Friend & Davis,* for the appellant.

*Attorney-General F. S. Blair,* for the Commonwealth.

LEWIS, J., delivered the opinion of the court.

The plaintiff in error was indicted in the county court of Brunswick county for the murder of Moses Young, by administering to the said Young strychnine poison in whiskey. At the last April term of the circuit court of the said county, he having demanded to be tried in that court, he was put upon his trial, found guilty by the jury, and sentenced to be hanged. After the verdict of the jury was rendered, a motion was made to set it aside as contrary to the law and the evidence, and for a new trial. But the motion was overruled, and the prisoner excepted. The facts proved at the trial are embodied in the bill of exceptions; and the question we have to determine is, whether upon those facts the circuit court erred in refusing to set aside the verdict and to grant the prisoner a new trial.

The facts proved, as certified in the record, are substantially these: That on the night of the 17th day of December, 1880, Moses Young died at his house in Brunswick county, and under such circumstances as created suspicions that he had been poisoned. He was an old man, 65 years of age, was subject to the colic, and a short time previous to his death had been hurt in his side by a cart. In the afternoon of that day the father of Oliver Hatchett, the prisoner, gave him a small bottle of whiskey with instructions to take it to Moses Young; at the same time telling him not to drink of it himself. The deceased lived about three miles from the prisoner's father, to whose house the prisoner at once proceeded. It seems that he was not acquainted with the deceased; or, if so, very slightly, and that he succeeded in finding the house only by inquiry of one of the neighbors. Soon after his arrival at the house of the deceased, he took supper with him, and a few minutes thereafter requested the deceased to go with him into the yard, and point out the path to him—it then being dark. After getting into the yard, the prisoner produced

the bottle and invited the deceased to drink—telling him that it was a little whiskey his father had sent him. The deceased drank and returned the bottle to the prisoner, who at once started on his return home. The deceased then returned into the house. In a short while thereafter he complained of pain in his side, began to grow worse, and told his wife that the man (meaning the prisoner) had tricked him in a drink of whiskey. He then got up, but fell immediately to the floor. Osborne and Charlotte Northington, two near neighbors, were then called in by his wife; and these three, whom the record describes as ignorant negroes, were the only persons present with the deceased until his death, which occurred about three hours after he drank of the whiskey from the bottle handed him by the prisoner.

They described his symptoms as follows: The old man had the jerks, complained of great pain, and every now and then would draw up his arms and legs and complained of being cramped; that he put his finger in his mouth to make him vomit, and his teeth clinched on it so that one of his teeth was pulled out in getting out his finger. They also testified that his dying declaration was that the man had killed him in a drink of whiskey.

From the symptoms as thus described, two physicians, who were examined as witnesses in the case, testified that as far as they could judge from the statements of the ignorant witnesses, they would suppose that Moses Young died from strychnine poison. No *post-mortem* examination of the deceased's body was made or attempted; nor was any analysis made of the contents of the bottle, which was returned about one-third full by the prisoner to his father, and was afterwards found.

After the arrest of the prisoner, and while under guard, he stated to the guard in charge of him that he would not be punished about the matter; that he intended to tell all

about it; that his father, Littleton Hatchett, gave him that mess and told him he would give him something to carry it and give it to Moses Young, and that it would fix him. He further stated that he went to Moses Young's house, called him out and gave him a drink, and returned the bottle and put it where his father had directed him to put it. The next day he made a statement on oath before the coroner's jury, and when asked by the foreman whether he was prepared, upon reflection, to say that what he had stated on the previous day was not true, he answered: "I am prepared to say that a part of what I said yesterday was true." He then made a statement in which he said that he carried the whiskey to the deceased by direction of his father, who told him not to drink of it; that he went to the house of the deceased and gave him a drink, and returned the bottle as directed by his father. But he did not state that his father told him that the whiskey would "fix" the deceased, or that he (the prisoner) knew that it contained poison or other dangerous thing.

It was also proved that Henry Carroll, who was jointly indicted with the prisoner, gave to Sallie Young, wife of the deceased, about three weeks before his death, something in a bottle which he said was strychnine, and which he told her to put in the coffee or food of the deceased; and that Osborne and Charlotte Northington knew of that fact, but did not communicate it to the deceased. It was also proved that Henry Carroll was the paramour of Sallie Young, which fact was also known to Osborne and Charlotte Northington.

Such are the facts upon which the plaintiff in error was convicted and sentenced to death.

Now, under the allegations in the indictment, it was incumbent upon the prosecution, to entitle the Commonwealth to a verdict, to establish clearly and beyond a reasonable doubt these three essential propositions:

1. That the deceased came to his death by poison.

2. That the poison was administered by the prisoner.

3. That he administered it knowingly and feloniously.

These propositions, we think, are not established by the evidence in this case.

In the first place, there is no sufficient proof that the deceased died from the effects of poison at all. From the symptoms, as described by ignorant witnesses, one of whom at least was a party to a conspiracy to poison the deceased, and who had been supplied with the means to do so (a fact known to the others), the most that the medical men who were examined in the case could say was that they *supposed* he died from strychnine poison. Strange to say, there was no *post-mortem* examination of the body of the deceased, nor was there any analysis made of the contents of the bottle from which he drank at the invitation of the prisoner, and which was returned by the latter to his father and afterwards found—all of which, presumably, might easily have been done, and in a case of so serious and striking a character as this ought to have been done. It is laid down by Wharton and other authorities that in a trial for murder by poison, to constitute a case on which a conviction can safely rest, it is important to show that a poison has been discovered in the body; and this was once carried so far in England and this country that it was difficult to secure a conviction unless the presence of the poison was chemically ascertained. See *Joe* v. *State of Florida*, 6 Florida, 591. This, it is true, is not absolutely required, as it has recently been satisfactorily shown that in certain poisons, of which strychnine is one, when the minimum to destroy life is given, no trace of it may be discovered in the stomach or intestines. Still, great strictness should be observed, and the clearest proof of the crime required, to safely warrant the conviction of the accused and the infliction of capital punishment. Such proof is wanting in this case to

establish the death of the deceased by the means alleged in the indictment.

Equally insufficient are the facts proved to satisfactorily show that if in fact the deceased died from the effects of poison, it was administered by the prisoner; and if administered by him, that it was done knowingly and feloniously.

It is not shown that if the whiskey he conveyed to the deceased contained poison, he knew or had reason to know the fact. It is almost incredible that a rational being, in the absence of provocation of any sort, or the influence of some strong and controlling motive, would deliberately take the life of an unoffending fellow-man. Yet in this case no provocation or motive whatever on the part of either the prisoner or of his father, from whom he received the whiskey of which the deceased drank, to murder the deceased, is shown by the evidence. It is true that the facts proved are sufficient to raise grave suspicions against the prisoner; but they fall far short of establishing his guilt clearly and satisfactorily, as required by the humane rules of the law, to warrant his conviction of the crime charged against him.

On the other hand, the facts proved show that the wife of the deceased, three weeks before his death, had been supplied by her paramour with strychnine to administer to her husband; and there is nothing in the case to exclude the hypothesis that the death of the deceased may not have been occasioned by the felonious act of his own unfaithful wife. It was not proven that the prisoner at any time procured, or had in his possession, poison of any kind; nor was the attempt made to connect him with, or to show knowledge on his part of, the poison which was delivered by Henry Carroll to Sallie Young, to be administered to her husband.

In short, the facts proved are wholly insufficient to warrant the conviction of the plaintiff in error for the crime for which he has been sentenced to be hanged; and the judgment of the circuit court must, therefore, be reversed, the verdict of the jury set aside, and a new trial awarded him.

The decree was as follows:

This day came again as well the plaintiff in error by his counsel, as the attorney-general on behalf of the Commonwealth, and the court, having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the judgment of the court below is erroneous.

Therefore it is considered by the court that the said judgment be reversed and annulled; and the court proceeding to render such judgment as ought to have been rendered by the court below, it is considered that the verdict of the jury be set aside and a new trial be awarded the prisoner.

Which is ordered to be certified to the said circuit court of Brunswick county.

JUDGMENT REVERSED.